UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHAVAUGHN SANDERS,

    *Plaintiff*,

v.

COSTCO WHOLESALE CORP.,

    *Defendant*.

Civil Action No. 23-1230 (TJK)

**MEMORANDUM OPINION**

    In May 2020, ShaVaughn Sanders slipped and fell while walking through a Costco in Washington, D.C. After her fall near a checkout register, she says that she saw something wet in the area. But that is all she knows. Sanders has no evidence about what the substance was, how it got on the floor, or how long it was there before she fell. Citing that lack of evidence, Costco moves for summary judgment. Sanders insists that video evidence shows that Costco employees were near the area where she fell and thus should have seen the substance before the accident. That argument, however, assumes the very thing Sanders needs to prove but for which she has no evidence—namely, that the substance was on the floor long enough that Costco, through its employees, should have noticed it. Nor does Sanders offer any evidence suggesting that Costco created the hazard or *actually* knew about it. Because she has not carried her burden of showing a genuine dispute of material fact, the Court will grant Costco's motion and enter judgment for it.

**I.**     **Background**

    As she had done many times before, Sanders went grocery shopping at Costco Wholesale Corporation's store in Washington, D.C. on May 18, 2020. ECF No. 14-2 ("Sanders Dep.") at 2. She had already left the store with her groceries when the chicken wings she had bought for her

uncle spilled on the ground. *Id.* at 3–4. An employee told her that she could get more wings, so Sanders went back inside the Costco. *Id.* at 5–6. She walked alongside the outer perimeter of the store's interior, passed several checkout registers, and talked to customer service. *Id.* at 6; *see also* ECF No. 16-1 at 1; Surveillance Video[1] at 1:00:54–1:01:52. After that conversation, Sanders walked towards the back of the store to pick up more chicken wings. Sanders Dep. at 7.

Sanders slipped and fell when passing through the area parallel to a checkout register. Sanders Dep. at 7. Although she was "not sure" what she slipped on, she said that she saw "something wet there" after her fall. *Id.* at 7–8. The substance "could've come from something that defrosted," Sanders suggested, and "[m]ay have been in someone's cart." *Id.* at 8. But she did not know how the substance—whatever it was—got to that area. *Id.* Nor did she know—or even "have any idea"—"how long it" had been "there before" she "stepped in it." *Id.* at 8, 12–13. As of Sanders's deposition in late 2023, she had not "learned any new information about what th[e] substance was," how it "came to be where it was," or "how long" it "was present before" her fall. *Id.* at 11.

Several employees responded to the incident. Annette Williams, a Costco cashier, was near the area where Sanders fell. ECF No. 14-3 at 2–3. But Williams said that she could not see the floor where the fall happened; her checkout register, including plexiglass "up to about [her] nose," stood between her and that location. *Id.* at 8–9. According to Williams, she examined the floor after Sanders got up and did not "see any liquid." *Id.* at 8. Nor did an assistant manager who "inspected the location" before helping Sanders "fill out an accident report." ECF No. 14-6 at 3–

---

[1] Sanders submitted to the Clerk's Office a flash drive with 91 minutes of video footage from a surveillance camera located inside the store. She claims that Costco produced this footage in discovery. *See* ECF No. 16 at 4. Costco does not dispute the authenticity of the video or the propriety of submitting it this way. In any event, the video does not alter the Court's conclusion that Costco is entitled to summary judgment.

4. Finally, a loss-prevention manager did not recall whether he saw liquid at the time. ECF No. 14-4 at 5–6. And when he later reviewed a picture that he took, he could not say whether "that's a liquid or not" on the floor. *Id.* at 5.

In April 2023, Sanders sued Costco for negligence in D.C. Superior Court. *See* ECF No. 1-1 at 9–14. Costco removed the case to federal court several weeks later, explaining that the parties are citizens of different states and that over $75,000 is at stake. *See* ECF No. 1; 28 U.S.C. § 1332(a). After discovery wrapped up, Costco moved for summary judgment. *See* ECF No. 14.

## II.     Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence is such that a reasonable factfinder could return a verdict for the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" if it could affect the outcome of the litigation under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the Court must "view the evidence in the light most favorable to the [nonmovant]"—here, Sanders—"draw all reasonable inferences in that party's favor, and avoid weighing the evidence or making credibility determinations." *Thompson v. District of Columbia*, 967 F.3d 804, 812–13 (D.C. Cir. 2020) (citation omitted). But in opposing summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted). So if the evidence on which the nonmovant relies is "'merely colorable' or 'not significantly probative'" such that no reasonable factfinder could rule in that party's favor based on that evidence, then "summary judgment may be granted." *Bradley v. D.C. Pub. Sch.*, 222 F. Supp. 3d 24, 28 (D.D.C. 2016) (quoting *Anderson*, 477 U.S. at 249–50). Thus, although at summary judgment the Court

3

does not weigh the evidence or find the facts, the Court must decide whether the nonmovant's evidence is probative enough that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249; *Johnson v. Perez*, 823 F.3d 701, 705 (D.C. Cir. 2016).

### III.    Analysis

Costco contends that summary judgment is appropriate because a jury could not find that Costco was negligent without speculating about how the substance ended up on the floor and how long it was there. In other words, Sanders has no evidence that Costco caused the hazard, actually knew about it, or should have known about it. For her part, Sanders insists that the presence of employees near the area of the fall creates a factual dispute about Costco's knowledge. But that proximity does not solve her main problem: she has no evidence shedding light on the creation or duration of the hazard, which prevents her from showing that Costco was negligent.

One preliminary point, unaddressed by the parties, before explaining that conclusion: choice of law. Because the Court sits in diversity jurisdiction, District of Columbia choice-of-law rules apply. *In re APA Assessment Fee Litig.*, 766 F.3d 39, 51 (D.C. Cir. 2014). Those rules call for "a modified governmental interests analysis which seeks to identify the jurisdiction with the most significant relationship to the dispute." *Id.* (citation omitted). Under that inquiry, relevant factors include the location of the injury and injury-causing conduct, the geographical characteristics of the parties, and "the place where the relationship is centered." *Wu v. Stomber*, 750 F.3d 944, 949 (D.C. Cir. 2014) (internal quotation marks and citation omitted). And those factors point squarely to D.C. law. Sanders resides in the District, *see* ECF No. 1-1 at 11, which is also where the injury happened and where the allegedly negligent conduct occurred. Further, the parties' relationship—at least for purposes of this lawsuit—is centered in D.C. So the Court applies the District's law of negligence.

That law places the burden of proof on plaintiffs for "three issues: the applicable standard

4

of care, a deviation from that standard by the defendant, and a causal relationship between that deviation and the plaintiff's injury." *Hudson v. Harris Teeter, LLC*, 292 F. Supp. 3d 496, 499 (D.D.C. 2018) (citation omitted). "[S]tore proprieter[s]" like Costco have "an obligation of due care to protect customers from risks created by employees or" by "other customers." *Safeway Stores, Inc. v. Morgan*, 253 A.2d 452, 453 (D.C. 1969). They are not, however, "insurer[s] or guarantor[s] of [their] customers' safety," so "the mere happening of an accident does not impose liability or permit an inference of negligence." *Sanoumegah v. Costco Wholesale Corp.*, No. 19-cv-1595 (DLF), 2021 WL 411135, at *2 (D.D.C. Feb. 5, 2021) (quoting *Napier v. Safeway Stores*, 215 A.2d 479, 480 (D.C. 1965)). Instead, a plaintiff alleging negligence based on a "dangerous condition" must show that the defendant deviated from the standard of care "*either* in creating" that "condition or in allowing [it] to continue without correction." *Martin v. Omni Hotels Mgmt. Corp.*, 206 F. Supp. 3d 115, 122 (D.D.C. 2016) (citation omitted). In other words, a plaintiff has two ways to show that a defendant breached the duty of care: either by creating the hazard or by permitting it to exist despite having notice. *See id.* at 122–23. For the second option, D.C. law recognizes two kinds of notice. The first, "actual notice," is self-explanatory. *Hudson*, 292 F. Supp. 3d at 499. But without that kind of notice, a plaintiff must show constructive notice—*i.e.*, "that the condition existed for such length of time that it should have become known and have been corrected." *Id.* (quoting *Morgan*, 253 A.2d at 453).

No reasonable jury could find that Sanders has established a deviation from the standard of care under either of these options. First, Sanders does not argue that Costco created the hazard. She does not say, for example, that a Costco employee caused the substance to be on the ground. *See* ECF No. 16 at 1–5. And as for the second option, she does not contend that Costco had actual notice of the hazard. To the contrary, she claims that Costco's employees "*failed* to recognize the

hazardous condition" before her fall. *Id.* at 1 (emphasis added); *see also id.* at 5 ("[A] reasonable jury can determine that Ms. Smith could and should have discovered dangerous condition [sic] prior to Plaintiff's fall and, thus, Defendant has constructive knowledge of the dangerous condition.").[2]  The undisputed evidence, moreover, forecloses both arguments.  Sanders repeatedly stated that she does not "know how [the substance] came to be there" or "who or what caused it to be there," Sanders Dep. at 8, 13; *see also id.* at 11, and she offers no evidence on the creation of the dangerous condition.  So too for a potential argument that Costco had actual notice.  Sanders points to "no testimony" or other evidence suggesting that "any employee . . . knew" that the hazard "exist[ed]" before the accident, so the Court may decide the actual-notice issue "as a matter of law."  *Hudson*, 292 F. Supp. 3d at 499.

That leaves the second way of fulfilling the second option: constructive notice, which turns on timing.  Was the substance "on the floor for such a duration of time that" the exercise of "reasonable care" would have led to the "discover[y]" of the "hazard"?  *Hudson*, 292 F. Supp. 3d at 501 (cleaned up and citation omitted).  "[C]onstructive notice," after all, "is but a shorthand way of saying that shopkeepers" have "a duty to police their premises with enough frequency to prevent . . . dangerous conditions" from lingering "for unreasonably prolonged periods."  *Wilson v. WMATA*, 912 A.2d 1186, 1190 (D.C. 2006) (emphases removed and citation omitted).  So a plaintiff who shows "only that a hazard existed for an undetermined period of time" has "not shown that the defendant had constructive notice."  *Martin*, 206 F. Supp. 3d at 128 (citation omitted).

At most, Sanders has shown only that liquid was on the ground for some amount of time before she fell.  But the "mere presence of a foreign substance is insufficient to establish negligence

---

[2] As for who "Ms. Smith" is, the reader's guess is as good as the Court's.  But the point remains: Sanders argues constructive, not actual, notice.

or notice." *Mixon v. WMATA*, 959 A.2d 55, 60 (D.C. 2008). Instead, Sanders bears the "burden" of pointing to "evidence that could show *how long* the [substance] was on the floor." *Hudson*, 292 F. Supp. 3d at 501 (emphasis added). And she must do more than show a "period of time during which a condition might have existed," which "does not permit an inference that the condition *did* exist during that entire period"—or, for that matter, that the condition existed for any particular amount of time. *Hines v. Safeway Stores, Inc.*, 379 A.2d 1174, 1175 (D.C. 1978) (emphasis added). As Sanders repeatedly admits, though, she has no evidence or "information at all"—indeed, not "any idea"—"about how long th[e] substance was present before [she] stepped in it." Sanders Dep. at 11, 13; *see also Sanoumegah*, 2021 WL 411135, at *3 (no constructive notice where plaintiff "provided no evidence whatsoever about how long the ice cube was on the floor").

This "inability to ascertain how long the" dangerous condition existed is "a fatal flaw in [Sanders's] constructive notice theory." *Ersado v. Rockpoint Grp., LLC*, No. 16-cv-2455 (RMM), 2023 WL 2705781, at *8 (D.D.C. Mar. 29, 2023). The reason is simple. On this record, the "jury would have . . . to indulge in sheer guesswork to determine whether the alleged" substance was on the floor "for a sufficient length of time" to "charge[]" Costco "with constructive notice." *Jones v. District of Columbia*, 123 A.2d 364, 366 (D.C. 1956). Put another way, how could the jury decide whether the liquid was there long enough that a Costco employee should have "discover[ed] and remove[d] it" when there is no evidence about timing? *Brodsky v. Safeway Stores*, 152 F.2d 677, 677 (D.C. Cir. 1945) (per curiam). Only speculation would permit that finding as opposed to, say, a finding that "a customer" spilled something "just before" Sanders "fell." *Id.*; *see also Orum v. Safeway Stores, Inc.*, 138 A.2d 665, 666 (D.C. 1958) (explaining that without "evidence as to how long the bean had been on the floor," any jury finding of notice would be speculative because it was "possible that another customer may have dropped it just before appellant stepped

7

on it").

Sanders responds by placing all her eggs in one basket: Costco employees were "within close proximity" to the location of her fall "for at least an hour" but "failed to recognize the hazardous condition." ECF No. 16 at 1. To support this theory, she provides screenshots from the surveillance video purporting to show Costco employees "examining the floor" where she fell in the hour leading up to the accident. *Id.* at 2–3; *see also* ECF No. 16-1 at 1–4; ECF No. 16-2 at 1-10. Because employees were "actually looking at the area where [she] slipped and fell," Sanders reasons, Costco had constructive knowledge of a dangerous condition. ECF No. 16 at 4–5.

Sanders overstates the clarity of the video evidence, and it is far from obvious that Costco employees were "specifically examin[ing] the floor" where she fell such that, if the liquid were present at that time, they should have noticed it.[3] ECF No. 16 at 2. But even if a reasonable jury could reach that conclusion, the critical problem with Sanders's theory of employee proximity would remain: its reliance on the unsupported premise that the substance was on the floor for any particular amount of time before her fall, which is necessary to show that the exercise of reasonable

---

[3] The screenshots do not clearly show employees "examining" the specific area where Sanders fell. That area is far away from the camera and obstructed by a checkout register. *See, e.g.*, ECF No. 16-1 at 3. Sanders's attempt to highlight this alleged inspection by drawing a circle on each of the 14 screenshots is unhelpful. Simply because an employee was facing different directions at apparently randomly selected times over an hour-long stretch does not mean that he was inspecting a specific area (that is not even visible in the video) as opposed to looking at items in shopping carts or other parts of the register area. Sanders, moreover, offers no evidence supporting her preferred interpretation of the video. She does not appear to have deposed the highlighted employee. And Williams, the cashier who was deposed and in the vicinity of the fall, did not testify—at least not in the excerpts that the parties provided—that any employee was inspecting that specific location before Sanders fell. Finally, the evidence shows that any substance on the floor was hard to see; Sanders could not identify the substance even after falling on it, two employees saw nothing after examining the area, and a third could not tell if the photo he took showed a liquid. *See* Sanders Dep. at 8; ECF No. 14-3 at 7; ECF No. 14-4 at 5–6; ECF No. 14-6 at 3–4. So it is hardly clear that Costco employees, even if they were looking around the area, should have noticed this particular hazard by sight alone if it were there.

care would have led to its discovery. As explained, she offers no evidence on when the dangerous condition was created. And the video, regardless of how clearly it shows employees looking at the area of her fall, says nothing about when the liquid appeared on the ground in that area.[4] So Sanders runs into the "fundamental" problem discussed in *Martin* because "any conclusion" that a nearby employee should have recognized the dangerous condition "depends on an assumption that the" hazard was "present" for enough time to enable that discovery. 206 F. Supp. 3d at 128–29. Put differently, it does not matter if employees were close to—or even if they were looking at—the area if the substance was not present at that time. And Sanders's argument leaves that crucial gap unfilled because she has no evidence on how long the substance was on the floor.

Recognizing this limitation, the caselaw makes clear that "an employee's proximity to the hazard alone is not sufficient to establish constructive notice without more evidence." *Kindig v. Whole Foods Mkt. Grp., Inc.*, 930 F. Supp. 2d 48, 53–54 (D.D.C. 2013). In *Mills v. Safeway Stores, Inc.*, for example, the customer testified "that immediately prior to her fall two of the store's employees walked over the area where she fell." 201 A.2d 20, 20 (D.C. 1964) (per curiam). But because the customer had "no evidence either as to the length of time" that the hazard "had been on the floor or as to the cause of its being there," the presence of employees was not enough to support a non-speculative finding of notice. *Id.* Or consider *Orum*, where "four of five store

---

[4] The Court does not understand Sanders to argue that the employees' purported examination of the floor suggests that they had actual knowledge of the hazard but did nothing about it. In other words, Sanders does not purport to use the video to show that the liquid was on the floor at any given time before her fall; instead, she *assumes* that it was there for long enough that the employees had "ample time" to "acknowledge the condition" but "fail[ed] to" do so. ECF No. 16 at 5. And although it is Sanders's "burden," not the Court's, "to identify the pertinent parts of the record" that she believes support her opposition, the Court has reviewed the entire video and confirmed that—especially given the limitations in what the video shows, as described in footnote 3—no reasonable jury could conclude from it when the liquid that caused Sanders's fall first appeared on the floor. *Hayslett v. Perry*, 332 F. Supp. 2d 93, 98 (D.D.C. 2004) (internal quotation marks and citation omitted).

employees were standing" "two or three feet" from the customer when she "slipped on a string bean lying in the aisle." 138 A.2d at 665. Still, without "evidence as to how long the bean had been on the floor," any jury finding "that the employees . . . saw the bean or should have seen it in time to remove it or warn" the customer "would rest on pure conjecture and not on reasonable inference." *Id.* at 666. Other cases teach the same lesson. *See Morgan*, 253 A.2d at 453 (that the hazard was "in close proximity to this employee" was "insufficient to imply notice" where there was "[n]o evidence" as to "how the [hazard] came to be on the floor or how long [it] had been there prior to the fall"); *Napier*, 215 A.2d at 481 (rejecting as a "vague imputation of knowledge" the customer's claim that "an employee, neither identified nor produced," was "standing nearby" the hazard).[5]

In sum, nothing in the record sheds light as to how the substance wound up on Costco's floor or how long it was there before Sanders's fall. So Sanders has not created a triable issue of fact on a key aspect of her negligence claim: whether Costco created the dangerous condition or had notice of it.

---

[5] Although Sanders does not argue this point, the Court also considers whether the video footage for the hour preceding her fall suggests that the liquid must have been on the floor *before* the video even started. The reasoning—perhaps implicit in Sanders's limited briefing—might be that if the liquid came to be on the floor within that hour, then the video would have shown it happening. But that would be true only if the cause was obvious—say, someone spilling a gallon of milk or dropping a jar of tomato sauce—and occurred in an unobstructed location such that the surveillance camera could pick it up (or at least show the cleanup efforts). Sanders, though, has no evidence about *what* the substance was or *how* it ended up on the ground. So to find that the dangerous condition must have existed before the video started based on the absence of a spill or other incident in the video, a jury would need to speculate about how the substance came to be on the floor. That is, a jury would have no basis for concluding that the cause would be visible on the video, rather than subtle and imperceptible—perhaps, as Sanders herself speculated, a food item defrosting in a customer's cart, creating a slick spot. Sanders Dep. at 8. To the contrary, and as discussed above, the evidence points towards a mostly unnoticeable hazard.

## IV.  Conclusion

      For all the above reasons, the Court will grant Defendant's Motion for Summary Judgment.

A separate order will issue.

/s/ Timothy J. Kelly<br>
TIMOTHY J. KELLY<br>
United States District Judge

Date: February 19, 2025